1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
2
                   10-60290-CR-COHN/SELTZER
3

4  THE UNITED STATES OF AMERICA, )
                                 )
5             PLAINTIFF,         )
                                 )
6        VS.                     )
                                 )
7  ANTHONY MELLONE,              )
                                 )
8             DEFENDANT.         )
   _____)
9

10

11          TRANSCRIPT OF SENTENCING HAD BEFORE THE HONORABLE

12  JAMES I. COHN, IN FORT LAUDERDALE, BROWARD COUNTY, FLORIDA, ON

13  TUESDAY, FEBRUARY 15, 2011, IN THE ABOVE-STYLED MATTER.

14

15
    APPEARANCES:
16
    FOR THE GOVERNMENT:   JEFFREY NEIMAN, A.U.S.A.
17                        500 E. BROWARD BLVD., 7TH FLOOR
                          FT. LAUDERDALE, FL 33301 - 954 356-7255
18
    FOR THE DEFENDANT:    CHRISTINE O'CONNOR, A.F.P.D.
19                        150 W. FLAGLER ST.
                          MIAMI, FL 33130 - 305 530-7000
20

21

22
                      CARL SCHANZLEH
23                OFFICIAL COURT REPORTER
                    U. S. COURTHOUSE
24              299 E. BROWARD BLVD., 202B
                FORT LAUDERDALE, FLORIDA 33301
25                   954 769-5488

1  (FORT LAUDERDALE, BROWARD COUNTY, FLORIDA;  TUESDAY,

2  FEBRUARY 15, 2011, IN OPEN COURT.)

3      THE COURT:  I THINK MELLONE WILL BE QUICKER SO WE WILL

4  TAKE MELLONE FIRST.

5      ALL RIGHT, MR. MELLONE, DO YOU WANT TO COME ON UP TO

6  COUNSEL TABLE AND WE WILL ADDRESS THE MATTER OF THE UNITED

7  STATES OF AMERICA VERSUS ANTHONY MELLONE.

8      THIS IS CASE NUMBER 10-60290-CR.  MR. MELLONE IS

9  PRESENT, HE IS REPRESENTED BY CHRISTINE O'CONNOR.  THE

10  GOVERNMENT IS REPRESENTED BY ASSISTANT UNITED STATES ATTORNEY

11  JEFFREY NEIMAN.

12      ON OCTOBER 29 OF 2010 MR. MELLONE ENTERED A PLEA OF

13  GUILTY TO A ONE COUNT INFORMATION WHICH CHARGED CONSPIRACY TO

14  COMMIT SECURITIES FRAUD IN VIOLATION OF 18, UNITED STATES CODE,

15  SECTION 371.

16      UPON ACCEPTANCE OF MR. MELLONE'S PLEA THE COURT

17  ADJUDGED HIM GUILTY, ORDERED A PRESENTENCE INVESTIGATION, AND

18  DEFERRED SENTENCE UNTIL TODAY'S DATE.

19      HAVE COUNSEL FOR THE RESPECTIVE PARTIES RECEIVED A

20  COPY OF THE PRESENTENCE REPORT, MR. NEIMAN?

21      MR. NEIMAN:  YES, YOUR HONOR.

22      THE COURT:  MISS O'CONNOR?

23      MS. O'CONNOR:  I HAVE, YOUR HONOR.

24      THE COURT:  ARE THERE ANY OBJECTIONS TO THE REPORT?

25      MS. O'CONNOR:  NONE FROM THE DEFENSE, YOUR HONOR

 1              MR. NEIMAN:  AND NONE FROM THE UNITED STATES EITHER,

 2   YOUR HONOR.

 3              THE COURT:  THE COURT MAKES THE FOLLOWING FINDINGS

 4   WITH RESPECT TO THE ADVISORY GUIDELINE.  THE TOTAL OFFENSE

 5   LEVEL IS 19, THE CRIMINAL HISTORY CATEGORY IS ONE, THE ADVISORY

 6   IMPRISONMENT RANGE IS 30 TO 37 MONTHS, PROBATION IS NOT

 7   AUTHORIZED, THE SUPERVISED RELEASE RANGE IS TWO TO THREE YEARS.

 8   THE FINE RANGE IS $6,000 TO $60,000, RESTITUTION IS NOT

 9   APPLICABLE, AND THERE IS A MANDATORY SPECIAL ASSESSMENT OF

10   $100.

11              DOES THE GOVERNMENT HAVE A RECOMMENDATION?

12              MR. NEIMAN:  YOUR HONOR, WE WOULD ASK THAT THE COURT

13   SENTENCE AT THE LOW END OF THE GUIDELINES.

14              THE COURT:  ALL RIGHT.  MISS O'CONNOR.

15              MS. O'CONNOR:  THE DEFENSE IS IN AGREEMENT WITH THAT

16   RECOMMENDATION, YOUR HONOR.

17              THE COURT:  ALL RIGHT.  MR. MELLONE, WHAT DO YOU HAVE

18   TO SAY, SIR?

19              MS. O'CONNOR:  YOUR HONOR, I HAVE A FEW WORDS TO SAY

20   ON BEHALF OF MR. MELLONE AND THEN HE MIGHT --

21              THE COURT:  ALL RIGHT.  SURE.

22              MS. O'CONNOR:  THANK YOU, SIR.

23              THE COURT:  I WILL BE MORE THAN HAPPY TO HEAR WHAT YOU

24   HAVE TO SAY AND MR. MELLONE.

25              MS. O'CONNOR:  GREAT.  I WILL PROMISE TO KEEP IT AS

1  BRIEF AS POSSIBLE.

2        MR. MELLONE IS HERE TODAY, YOUR HONOR, IN RECOGNITION
3  OF THE FACT THAT, QUITE FRANKLY, HE HAS MESSED UP AND HE WANTS
4  TO TAKE RESPONSIBILITY.

5        HE IS HERE TODAY WITH THE SUPPORT OF HIS FAMILY,
6  MR. AND MRS. MELLONE, HIS BROTHER JOE, AND HIS DEAR FRIENDS
7  JUDY AND SUSETTE.  AND UNDOUBTEDLY IF THIS SENTENCING HAD
8  PROCEEDED AS IT WAS ORIGINALLY SCHEDULED ON FRIDAY I'M SURE WE
9  WOULD HAVE A PACKED HOUSE, AND I THINK A LOT OF PEOPLE CAME IN
10  FROM OUT OF TOWN.  HIS PARENTS CAME FROM CLEAR ACROSS THE
11  COUNTRY, AND HIS FATHER PUT IT TO ME HE IS HERE FOR THE LOVE OF
12  HIS SON.

13        MR. MELLONE HASN'T HAD WHAT COULD BE DESCRIBED AS A
14  PROBLEM FREE LIFE.  HE HAS HIT SOME BUMPS ALONG THE ROAD.  YOUR
15  HONOR HAS HIS PRESENTENCE INVESTIGATION REPORT.  IN HIS YOUNGER
16  DAYS HE STRUGGLED WITH A DRUG ADDICTION, AND I THINK THAT MOST
17  OF HIS CONTACTS WITH LAW ENFORCEMENT STEMS FROM THAT ADDICTION,
18  YOUR HONOR.

19        AND, AS REFLECTED IN HIS REPORT HE EVENTUALLY OVERCAME
20  THAT DRUG ADDICTION WITH THE HELP OF HIS FAMILY AND WITH THE
21  SUPPORT OF HIS FAMILY.  AND ESPECIALLY IN RECENT TIMES
22  MR. MELLONE'S LIFE HAS BEEN CHARACTERIZED BY THE LOVE HE HAS
23  FOR HIS FAMILY AND FOR HIS FRIENDS.

24        FOR INSTANCE, A FEW YEARS BACK HIS SON RAN INTO SOME
25  PROBLEMS, AND MR. MELLONE DISCOVERED THAT HIS SON HAD SOME

1  PROBLEMS WITH DRUGS, AS THE CHILDREN OF ADDICTS OFTEN DO.

2  MR. MELLONE WAS ON THE FIRST FLIGHT ACROSS THE COUNTRY AND HE

3  PERSONALLY SAW TO IT THAT HIS SON KICKED HIS HABIT JUST LIKE HE

4  DID.  I THINK THAT'S A PRETTY ILLUSTRATIVE EXAMPLE OF THE

5  LENGTHS HE GOES TO FOR THE PEOPLE IN HIS LIFE.

6        KIND OF ON, YOU KNOW, A LESS FORMAL LEVEL, RIGHT AFTER

7  THE CHANGE OF PLEA ANTHONY MELLONE SAID, "HEY, YOU KNOW WHAT,

8  CHRISTY?  THERE IS A BOAT SHOW COMING THROUGH TOWN AND MY

9  FAMILY IS HAVING A BARBECUE.  WHY DON'T YOU BRING YOUR FAMILY

10 AND COME AND HAVE A BURGER AND A BEER?"

11        YOU KNOW, I THINK THAT THAT SAYS A LOT, AND ESPECIALLY

12 AS A PUBLIC DEFENDER.  I APPRECIATE THE APPRECIATION THAT

13 MR. MELLONE HAS SHOWN TO ME, AND I THINK THAT STORY -- I JUST

14 WANTED TO KIND OF PAINT A PICTURE OF WHAT KIND OF A GUY HE IS

15 AND HOW HE TREATS PEOPLE IN HIS LIFE.  HE INVITED HIS PUBLIC

16 DEFENDER.

17        THE DEFENDANT:  I MEAN THE PROBATION OFFICER.

18        MS. O'CONNOR:  YOU KNOW, A FEW WEEKS AGO MR. MELLONE

19 AND I WERE CHATTING IN MY OFFICE, AND HE SAID TO ME, HE SAID

20 THE -- "YOU KNOW, THE WORST THING ABOUT THIS, CHRISTY, BESIDES

21 WHAT I'M PUTTING MY FAMILY THROUGH.  I KNOW IT HAS BROKEN MY

22 MOTHER'S HEART.  I KNOW I'VE BROKEN MY FATHER'S HEART.  THE

23 WORST PART ABOUT THIS CRIME IS THAT I GOT TWO OTHER INNOCENT

24 PEOPLE WRAPPED UP IN IT."

25        AND BY THAT HE WAS TALKING ABOUT LARRY WILCOX AND ALEX

1   PERSINIA.  AND HE SAID, "YOU KNOW, MR. WILCOX, HE'S A GOOD GUY.

2   HE SHOULDN'T HAVE BEEN WRAPPED UP IN THIS, AND THAT'S PROBABLY

3   THE WORST PART OF WHAT I DID."  AND HE'S -- HE'S LIVING WITH

4   THAT GUILT, AND HE ACKNOWLEDGES IT, AND HE FEELS IT EVERY DAY.

5         YOU KNOW, LAST WEEK WE WERE TALKING, AND HE -- HE

6   SAID, "AFTER THIS IS DONE I WANT TO START OVER.  I WANT TO GET

7   OUT OF THE BUSINESS.  I WANT TO MOVE TO CALIFORNIA."

8         YOU KNOW, HE IS IN THE PROCESS RIGHT NOW OF FILING FOR

9   BANKRUPTCY.  EVERYTHING HE HAS IS GONE KIND OF AS A RESULT OF

10  THIS SCHEME.  NOBODY WILL DO BUSINESS WITH HIM.  MR. MELLONE

11  WANTS TO MOVE TO CALIFORNIA, GET HIS LIFE STARTED AGAIN, BE

12  CLOSE TO HIS PARENTS AND START OVER.

13        I'M HERE TODAY TO ASK THE COURT -- AND MR. MELLONE IS

14  HERE TODAY TO APOLOGIZE TO THE COURT AND ASK FOR THE COURT'S

15  FORGIVENESS AND MERCY AND THE CHANCE TO ALLOW MR. MELLONE TO

16  START OVER WITH HIS LIFE ONCE HE HAS SERVED THIS.

17        THE COURT:  MR. MELLONE.

18        THE DEFENDANT:  HOW ARE YOU DOING, YOUR HONOR?

19        I APOLOGIZE FOR TAKING UP YOUR TIME FOR THIS MESS I

20  GOT MYSELF INTO ALONG WITH EVERYBODY ELSE INVOLVED.  THE LAST

21  10 YEARS DOING THIS BUSINESS HAVE BEEN PRETTY MUCH A STRUGGLE

22  FOR ME SINCE I DIDN'T REALLY GET INTO A PUBLIC ENTITY BEFORE

23  SOME PEOPLE TOOK ME PUBLIC.  I LEARNED AS I WAS GOING ALONG

24  DOING THIS JOB.  I MADE A MISTAKE.  I MADE THE BIGGEST MISTAKE

25  OF MY LIFE BY DOING THIS DEAL MAINLY BECAUSE IT WAS WRONG AND

1  BECAUSE OF MY SHAREHOLDERS, WHICH 65 PERCENT OF JUST ABOUT

2  EVERYBODY IN MY COMPANY BELIEVED IN ME.

3      I WAS TRYING TO MAKE THEM HAPPY.  I WAS TRYING TO MAKE

4  THEM SUCCEED.  AND, YOU KNOW, MY FATHER AND EVERYBODY ELSE HAD

5  NEVER SAID NO AND I HAVE NEVER WALKED AWAY FROM NOTHING.  I'VE

6  ALWAYS TRIED TO SUCCEED ONE WAY OR ANOTHER TO MAKE EVERYBODY

7  HAPPY, AND THAT'S WHAT HAS ALWAYS BEEN IN MY HEART IS TO HELP

8  OTHER PEOPLE AND DO RIGHT.

9      I MADE COMMITMENTS TO PEOPLE.  I SAW THIS AS AN

10  OPPORTUNITY THAT COULD HAVE MADE MY COMPANY MOVE FORWARD, ALL

11  MY SHAREHOLDERS, EVERYBODY IN THE WORLD THAT HAD INVESTED AND

12  BELIEVED IN ME.  I WAS TRYING TO MAKE IT WORK.

13      LIKE SHE SAID, BECAUSE I LIKE TO HELP PEOPLE.  THAT'S

14  WHAT MAKES ME HAPPY IN MY HEART IS HELPING EVERYBODY THAT I CAN

15  WITH SOMETHING THAT I CAN DO.  I BROUGHT TWO PEOPLE IN THAT HAD

16  NEVER BEEN IN TROUBLE, ALEX WHO WAS A PROFESSOR AT PEPPERDINE

17  UNIVERSITY, I BELIEVE.  ALEX, A MOVIE STAR.  I MET LARRY, A

18  MOVIE STAR.  I WAS A STUNT MAN ALL MY LIFE.

19      I CAME UP FROM THE STREETS.  WE STRUGGLED AS KIDS.  MY

20  FATHER GAVE US AND TAUGHT US THE BEST HE CAN DO.  I JUST WANTED

21  TO HELP.  I WANTED TO DO THE RIGHT THING, AND UNFORTUNATELY I

22  DID THE WRONG THING.  I MEAN, MY BIGGEST SORROW OF THIS AND THE

23  THING I'M REALLY, REALLY, REALLY SORRY FOR IS THAT I'VE HURT MY

24  SHAREHOLDERS AND MAINLY LARRY AND ALEX.  THEY DIDN'T DESERVE

25  THIS, AND I DON'T KNOW REALLY WHAT I CAN SAY.

 1          YOU KNOW, I WANT MY SHAREHOLDERS TO MAKE IT.  THERE IS

 2   A LOT OF PEOPLE OUT THERE.  I'M BANKRUPT NOW.  I'M LOSING MY

 3   HOUSE.  I HAVE LOST EVERYTHING.  THE SHAREHOLDERS HAVE BEEN

 4   VERY UPSET WITH ME.  THEY TORCHED AND BLEW UP MY CARS IN MY

 5   DRIVEWAY.  EVERYBODY JUST WALKED AWAY FROM ME.  I'VE GOT

 6   NOTHING ANYMORE.

 7          I WOULD LIKE TO BE ABLE TO GO INTO TO A CAMP WHERE I

 8   CAN SEE MY FAMILY, WHERE THEY CAN VISIT ME IN CALIFORNIA.  I

 9   WOULD LIKE TO BE ABLE TO MOVE FROM FLORIDA BACK TO CALIFORNIA

10   WHERE I CAN GO BACK WITH MY DAD IN CONSTRUCTION AND JUST DO --

11   DO WHAT I USED TO DO.

12          I MEAN, WHEN I WAS A KID I WAS WILD.  I DID A LOT OF

13   STUPID THINGS WHEN I WAS A KID.  WE WERE GETTING HIGH,

14   STEALING, THIS AND THAT.  NOTHING REALLY, REALLY BAD EXCEPT FOR

15   THAT ONE CASE BUT IT WAS THROWN OUT WITH THE RAPE.

16          BUT I JUST -- I'M REALLY SORRY.  I WOULD LIKE ANOTHER

17   CHANCE, AND I HOPE THAT -- I HOPE THAT GOD IS IN YOUR HEART TO

18   HELP ME OUT, AND THANK YOU FOR YOUR TIME.

19          THE COURT:  THANK YOU, SIR.

20          THE COURT WILL HONOR THE AGREEMENT OF THE PARTIES.

21   THE COURT HAS CONSIDERED THE STATEMENTS OF ALL PARTIES, THE

22   PRESENTENCE REPORT, WHICH CONTAINS THE ADVISORY GUIDELINES, AS

23   WELL AS THOSE FACTORS SET FORTH IN 18, UNITED STATES CODE,

24   SECTION 3553(A).

25          IT IS THE FINDING OF THIS COURT THAT MR. MELLONE IS

 1  FINANCIALLY UNABLE TO PAY A FINE.

 2          IT IS THE JUDGMENT OF THIS COURT THAT THE DEFENDANT,

 3  ANTHONY MELLONE, IS HEREBY COMMITTED TO THE CUSTODY OF THE

 4  BUREAU OF PRISONS TO BE IMPRISONED FOR A TERM OF 30 MONTHS.

 5          UPON RELEASE FROM IMPRISONMENT MR. MELLONE SHALL BE

 6  PLACED ON SUPERVISED RELEASE FOR A TERM OF TWO YEARS.

 7          WITHIN 72 HOURS OF RELEASE, MR. MELLONE, YOU ARE

 8  ORDERED TO REPORT IN PERSON TO THE PROBATION OFFICE IN THE

 9  DISTRICT WHERE YOU ARE RELEASED.

10          WHILE ON SUPERVISED RELEASE YOU SHALL NOT COMMIT ANY

11  CRIMES, SHALL BE PROHIBITED FROM POSSESSING A FIREARM OR OTHER

12  DANGEROUS DEVICES, SHALL NOT POSSESS A CONTROLLED SUBSTANCE,

13  SHALL COOPERATE IN THE COLLECTION OF DNA, AND SHALL COMPLY WITH

14  THE STANDARD CONDITIONS OF SUPERVISED RELEASE INCLUDING THE

15  FOLLOWING SPECIAL CONDITIONS.

16          MENTAL HEALTH TREATMENT, SUBSTANCE ABUSE TREATMENT,

17  EMPLOYMENT SOLICITATION RESTRICTION, SELF-EMPLOYMENT

18  RESTRICTION, AND PERMISSIBLE SEARCH, ALL AS NOTED IN PART G OF

19  THE PRESENTENCE REPORT.

20          IN ADDITION, MR. MELLONE, YOU ARE ORDERED TO PAY

21  IMMEDIATELY TO THE UNITED STATES A SPECIAL ASSESSMENT OF $100.

22          MISS O'CONNOR, ARE YOU REQUESTING THAT THE COURT

23  RECOMMEND THE 500 HOUR DRUG ABUSE TREATMENT PROGRAM OFFERED BY

24  THE BUREAU OF PRISONS?

25          MS. O'CONNOR:  I AM, YOUR HONOR.

 1         THE COURT:  SINCE THERE IS A FACTUAL BASIS HERE IN THE

 2  PRESENTENCE REPORT THE COURT WILL RECOMMEND THAT PROGRAM TO THE

 3  BUREAU OF PRISONS.

 4         SO THE TOTAL SENTENCE IMPOSED IS 30 MONTHS

 5  IMPRISONMENT, TWO YEARS OF SUPERVISED RELEASE, AND A $100

 6  SPECIAL ASSESSMENT.

 7         NOW THAT SENTENCE HAS BEEN IMPOSED DOES THE DEFENDANT

 8  OR HIS COUNSEL OBJECT TO THE COURT'S FINDINGS OF FACT OR TO THE

 9  MANNER IN WHICH SENTENCE WAS PRONOUNCED?

10         MS. O'CONNOR:  NO OBJECTIONS, YOUR HONOR.

11         MR. NEIMAN:  YOUR HONOR, WE WOULD JUST ASK FOR ONE

12  ADDITIONAL CONDITION OF SUPERVISED RELEASE, AND THAT IS WHILE

13  ON SUPERVISED RELEASE THAT THE DEFENDANT NOT ENGAGE IN A

14  BUSINESS THAT COULD BE CONSTRUED AS A PENNY STOCK.

15         THE COURT:  THE COURT WILL GRANT THAT REQUEST.  I

16  THINK THAT IS REASONABLE.  THAT REQUEST IS GRANTED.

17         LET ME ADVISE YOU, MR. MELLONE, YOU DO HAVE THE RIGHT

18  TO APPEAL THE SENTENCE IMPOSED.  ANY NOTICE OF APPEAL MUST BE

19  FILED WITHIN 14 DAYS AFTER ENTRY OF JUDGMENT.

20         IF YOU ARE UNABLE TO PAY FOR THE COST OF AN APPEAL YOU

21  MAY APPLY FOR LEAVE TO APPEAL IN FORMA PAUPERIS.

22         IS THERE ANY AGREEMENT REGARDING SELF-SURRENDER

23  VIS-A-VIS REMAND?

24         MR. NEIMAN:  YOUR HONOR, WE WOULD ASK FOR A

25  SELF-SURRENDER JOINTLY IN THIS MATTER.

```
 1            THE COURT:  ALL RIGHT.  HOW MUCH TIME HAS BEEN
 2   REQUESTED?
 3            MS. O'CONNOR:  WE HAD AN AGREEMENT OF APRIL 15TH WITH
 4   MR. O'QUINN.
 5            THE COURT:  ALL RIGHT, APRIL THE 15TH IT IS.  TAX DAY.
 6            YOU WILL NEED TO REPORT TO THE PRISON DESIGNATED BY
 7   THE BUREAU OF PRISONS NO LATER THAN TWO P.M. ON APRIL 15.
 8            MS. O'CONNOR:  AND ON THAT NOTE, YOUR HONOR, IF THE
 9   COURT COULD RECOMMEND TO THE BUREAU OF PRISONS THAT MR. MELLONE
10   BE PLACED AS CLOSE AS POSSIBLE TO LOS ANGELES, CALIFORNIA,
11   CONSISTENT WITH THE SECURITY CLASSIFICATION.
12            THE COURT:  IS THAT IN THE MIDDLE DISTRICT?
13            MR. NEIMAN:  THAT'S ACTUALLY THE CENTRAL DISTRICT OF
14   CALIFORNIA.
15            THE COURT:  THE CENTRAL DISTRICT, YES.  THE COURT WILL
16   RECOMMEND A FACILITY LOCATED WITHIN THE CENTRAL DISTRICT OF
17   CALIFORNIA.
18            ANYTHING FURTHER?
19            MS. O'CONNOR:  NOTHING FURTHER, YOUR HONOR.
20            THE COURT:  MR. MELLONE, YOU HAD YOUR HAND UP, SIR.
21            THE DEFENDANT:  CAN I MOVE RIGHT AWAY FROM HERE TO GO
22   SPEND THE REST OF MY TIME WITH MY FAMILY --
23            THE COURT:  I DON'T --
24            THE DEFENDANT:  -- AND CHECK IN SOMEWHERE IN
25   CALIFORNIA?
```

```
 1            THE COURT:  WELL, HE IS GOING TO BE REPORTING IN
 2   CALIFORNIA.  WHAT ABOUT THAT?
 3            THE PROBATION OFFICER:  WE NEED TO ASK FOR THEM TO
 4   ACCEPT HIM FOR SUPERVISION.
 5            THE COURT:  ALL RIGHT.
 6            THE PROBATION OFFICER:  BUT I WILL --
 7            THE COURT:  SO THERE IS A CONDITION PRECEDENT.
 8   CALIFORNIA HAS GOT TO ACCEPT YOU FIRST.  SO UNTIL THAT
 9   ACCEPTANCE GOES THROUGH, NO.  ONCE THE ACCEPTANCE GOES THROUGH,
10   YES.  OKAY?
11            THE DEFENDANT:  THANK YOU, YOUR HONOR.
12            THE COURT:  THANK YOU, SIR.
13            FOLKS, THANK YOU ALL FOR COMING HERE.  I'M SURE THAT
14   YOUR SUPPORT MEANS A LOT TO MR. MELLONE.
15            MS. O'CONNOR:  THANK YOU, YOUR HONOR.
16            MR. NEIMAN:  THANK YOU, YOUR HONOR.
17                              - - -
18
19
20
21
22
23
24
25
```

```
 1

 2

 3                    C E R T I F I C A T E

 4

 5

 6   UNITED STATES OF AMERICA

 7   SOUTHERN DISTRICT OF FLORIDA

 8

 9

10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11   STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12   HEREBY CERTIFY THAT THE FOREGOING 12 PAGES CONSTITUTE A TRUE

13   TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14   THE CITY OF FORT LAUDERDALE, FLORIDA, IN THE MATTER THEREIN

15   STATED.

16        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS

17   23RD DAY OF MARCH 2012.

18

19                         /S/CARL SCHANZLEH
                           CARL SCHANZLEH, RPR-CM
20                         OFFICIAL FEDERAL COURT REPORTER
                           299 EAST BROWARD BLVD., 202B
21                         FORT LAUDERDALE, FL  33301
                           TELEPHONE 954/769-5488
22

23

24

25
```